**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DUANE M. LINDSEY, )<br>          Plaintiff, )<br>          v. )<br>JO ANNE B. BARNHART, )<br>Commissioner of Social Security, )<br>          Defendant. ) | Civil Action No. 05-241 Erie |

**MEMORANDUM OPINION**

McLAUGHLIN, SEAN, J.

      Plaintiff, Duane M. Lindsey, (hereinafter "Plaintiff" or "Lindsey"), commenced the instant action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq,* and § 1381 *et seq.*  Lindsey filed applications for DIB and SSI on January 11, 2002, alleging disability since November 1, 2001 due to leg and lower back pain (Administrative Record, hereinafter "AR", 143-145; 186; 304-306).  His applications were denied, and he requested a hearing before an administrative law judge ("ALJ") (AR 126-130; 307-310).  A hearing was held before an administrative law judge ("ALJ") on September 12, 2002 (AR 42-58).  Following this hearing, the ALJ found that he was not entitled to a period of disability, DIB or SSI under the Act (AR 311-319).  The Appeals Council granted Lindsey's request for review, vacated the unfavorable decision, and remanded the case to the ALJ for further administrative proceedings (AR 330-333).

      The ALJ conducted subsequent hearings on February 18, 2004 and November 19, 2004 (AR 59-117).  On January 24, 2005, the ALJ again found that Lindsey was not entitled to a period of disability, DIB or SSI under the Act (AR 21-28).  His request for review by the Appeals Council was denied (AR 10-13), rendering the Commissioner's decision final under 42 U.S.C. § 405(g).  The instant action challenges the ALJ's decision.  Presently pending before the Court are cross-motions for summary judgment.  For the reasons set forth below, we will grant the

Defendant's motion and deny the Plaintiff's motion.

## I. BACKGROUND

Lindsey was born on January 1, 1966, and was thirty-eight years old on the date of the ALJ's decision (AR 22; 143). He has a ninth grade education, and past work experience as a dishwasher, truck loader, food prep cook, fork lift operator, spray painter, assembler, materials handler, machine operator, warehouseman, maintenance worker, driver and security guard (AR 22).

Lindsey was injured in a pedestrian/motor vehicle accident in November 1996 and suffered an open fracture of his right leg, resulting in a steel rod and metal screws being placed in his right leg from his knee to his ankle (AR 233). He also sustained a non-displaced fracture of his left leg (AR 233). Lindsey was off work for approximately three to four months following the accident (AR 233). He returned to work as a material handler in a plastics factory until 1998, and between 1998 and 2001, he held a series of other jobs before he stopped working in November 2001 (AR 186-187; 195; 233).

In November 2000, Lindsey presented to Community Health Net complaining of leg and back pain (AR 279). On physical examination, Merja Wright, M.D., reported that he had good mobility with no palpable discomfort in his lower back, although he had a hard time bending forward (AR 279). His straight leg raise test showed tight hamstrings but no discomfort (AR 279). His right knee showed surgical scars and weakness, especially in the ACL structure (AR 279). Dr. Wright was able to feel the rod in his knee, and his calf was slightly larger than the other but no swelling was present (AR 279). His left knee was slighty loose in the ACL, but was otherwise normal (AR 279). Dr. Wright assessed lumbar pain, bilateral knee pain and weakness (AR 279). He recommended Advil and an exercise program for his lower back and knees (AR 279).

Lindsey underwent a physical examination at Hamot Medical Center in December 2000 (AR 233). He exhibited full motion with no spasm, and a straight leg raise test and neurological test was negative (AR 233). Rod prominence was noted in his right knee, and his bilateral knee examination was "ok" (AR 233). It was noted that he was a small built man "not built for heavy lifting" (AR 233). Diagnostic studies were ordered, Flexeril was prescribed, and back exercises

were recommended (AR 233). R. A. Rahner, M.D., an orthopedic surgeon, reported that x-rays of Lindsey's legs showed that his previous fractures were well-healed and generally in good alignment with no indication of arthritis (AR 232; 244). X-rays of his lumbar spine showed sacralization at the L5 disc level, but no facet degeneration or disc narrowing (AR 232). Dr. Rahner concluded that Lindsey had mechanical low back pain and possible right leg pain secondary to retained metal fixation (AR 232). He recommended that he continue back stretching and strengthening exercises, and possibly consider removal of the rod and screws in his right tibia (AR 232). Dr. Rahner opined that Lindsey was suitable for employment with no repetitive or heavy lifting in excess of 25 pounds (AR 232).

On January 31, 2001, Lindsey underwent a consultative evaluation performed by John M. Ferretti, D.O., an internist (AR 244-248). Lindsey reported a history of low back pain since 1999 for which he was not undergoing treatment (AR 244). He reported seeing Dr. Rahner in December 2000 for knee pain and x-rays were conducted (AR 244). According to Lindsey, Dr. Rahner told him there was no significant disease and he was prescribed Flexeril and Vicodin as needed (AR 244). On physical examination, Dr. Ferretti reported that his deep tendon reflexes were symmetrical and active in both his upper and lower extremities (AR 245). His motor strength was functional at 5/5, and there was no evidence of muscle atrophy or restrictions in range of motion (AR 245). Lindsey exhibited a normal gait, and had no difficulty in sitting, bending, standing, walking lifting or grasping (AR 245). His neurologic status was intact (AR 245). Lumbar spine x-rays showed only minor degenerative changes present in the lower thoracic spine with a narrowed transitional L5-S1 disk space (AR 248). Dr. Ferretti formed an impression of chronic low back pain of uncertain etiology (AR 245).

On February 7, 2002, a consultative examination was performed by John C. Kalata, D.O., a family practitioner (AR 258-265). Utilizing a cane, Lindsey walked into the office in a slow manner and appeared to have an antalgic type gait (AR 258). Lindsey complained of lower back pain and leg pain, but denied taking any medication for his pain (AR 258). He claimed his legs tensed up and he had difficulty walking (AR 258). On physical examination, Dr. Kalata reported that he had some atrophy of the quadriceps in his lower extremities, and had a scar on his right knee with a palpable rod in his right leg (AR 260). Straight leg raise testing was 75 degrees on

the left and 50 degrees on the right (AR 260).  Lindsey also had a decreased range of motion in his knees, hips, and lumbar region (AR 260, 262-263).  Dr. Kalata concluded that Lindsey had ambulatory dysfunction, and chronic pain in his legs and low back secondary to the previous leg fractures (AR 260).

Dr. Kalata completed a medical source statement of Lindsey's ability to perform work-related physical activities (AR 264).  He opined that Lindsey was limited to lifting and carrying 2 to 3 pounds at a time, could stand and walk 1 hour or less in an 8-hour day, was limited in pushing/pulling with his lower extremities, could not stoop, crouch or balance, but could occasionally bend and climb, and had no limitations in sitting (AR 264-265).  Dr. Kalata listed "leg pains [and] back pains" as supportive medical findings for the limitations imposed (AR 264-265).

A state agency disability claims adjudicator completed a residual physical functional capacity assessment form on March 12, 2002 (AR 266-273).  The adjudicator opined that Lindsey could lift and carry 20 pounds occasionally and 10 pounds frequently, could stand and/or walk 6 hours in an 8-hour workday, and could sit 6 hours in an 8-hour workday (AR 267).  H. W. Wallace, a state agency regional medical consultant, completed a medical consultant's review form on April 3, 2002, and stated that he agreed with all of the adjudicator's conclusions, including the functional limitations set forth in the assessment (AR 272).

An MRI of Lindsey's lumbar spine conducted in June 2002 showed a shallow disc protrusion at L4/L5 which minimally abutted the L5 nerve root sleeve on the right, and no indication of spinal canal stenosis (AR 290).  Due to complaints of chest pain, Lindsey also underwent a stress test in June 2002 to rule out coronary artery disease (AR 278, 291-293).  He was able to exercise for 14 minutes at a peak workload of 5.0 miles per hour on an 18 percent incline, which was equivalent to 15 METS  (AR 292).  He was diagnosed with an adequate ECG stress test, negative for angina, negative for the ECG diagnosis of ischemia, a normal perfusion scan, and an "excellent exercise capacity" (AR 293).   In July 2002, Lindsey reported to Yvonne T. Hoogland, M.D., a Community Health Net physician, that medication helped his pain (AR 277).

Dr. Hoogland referred Lindsey for a physical therapy evaluation in March 2003 (AR 401).

He was discharged from physical therapy on May 12, 2003 due to his failure to appear for a follow-up appointment following his initial evaluation on March 21, 2003 (AR 436). The physical therapist noted that at his initial evaluation, Lindsey demonstrated positive Waddell signs on examination which was indicative of non-organic or non-mechanical pain (AR 436).[1]

On April 12, 2003, Lindsey underwent a consultative examination performed by Bharathi S. Voora, an internist (AR 404-413). Lindsey reported that he suffered from back pain since his accident in 1996 for which he took Ibuprofen (AR 404-405). He further reported that he was undergoing physical therapy at Hamot (AR 406). Dr. Voora observed that his gait and station were normal, and concluded that it was unnecessary for him to utilize a cane (AR 406). On physical examination, Dr. Voora found his motor function was 5/5 in both his upper and lower extremities and equal bilaterally (AR 407). His reflexes were 2+ in both elbows and wrists, and 1+ in both knees and ankles (AR 407). He had a slight decrease in the range of motion of his right knee, but he had normal motion in his lumbar spine (AR 410-411). Dr. Voora found no atrophy of his muscles, and his straight leg raise test was negative bilaterally in both the supine and sitting position (AR 407).

Dr. Voora completed a medical source statement of Lindsey's ability to perform work-related physical activities, and concluded that he could frequently lift and carry up to 25 pounds, had no limitations in standing, walking, sitting, pushing or pulling, and had no postural limitations (AR 408-409).

Community Health progress notes reflect that Lindsey underwent surgery on May 12, 2003 for attempted removal of the metal rod from his right leg (AR 432).

In September 2003, a Community Health Net physical form showed that on physical examination, Lindsey had a slight decrease in the range of motion in his right knee secondary to pain, but his gait, muscle strength and stability were normal (AR 429-430). Ibuprofen, physical therapy and exercises were recommended for his pain (AR 430).

---

[1] "Waddell signs" consist of eight enumerated clinical findings an examiner investigates while evaluating a patient complaining of back pain. *Attorneys Medical Deskbook* 3d § 11:2 (2005). The presence of three or more of these clinical findings is "usually considered sufficient to make a diagnosis of functional disorder or deliberate deception (malingering) and to rule out physical abnormality." *Id*.

Lindsey returned to Community Health Net on December 19, 2003 complaining of back pain (AR 424). On physical examination, he had steady ambulation and full active range of motion of the lumbar spine and both legs (AR 425). He was assessed with low back pain and given Bextra samples, and told to follow-up with Dr. Hoogland in two to three weeks (AR 425). Progress notes dated December 22, 2003 stated that he was a "no show" for his follow-up appointment (AR 425). He returned on December 29, 2003 stating that he needed disability papers completed (AR 425). Progress notes indicated that he had not seen Dr. Hoogland since May 2003 (AR 424). He was to keep his office visit in January 2004 for completion of the forms, but he failed to appear for the appointment (AR 424).

Lindsey was seen by David Williams, D.O. from Saint Vincent Health System, on February 24, 2004 (AR 439-441). Lindsey reported things had "been going well," although he stated that the night before he had a burning sensation in his right knee (AR 439). He also complained of shortness of breath with activity, such as when he walked excessively or when he worked hard (AR 439). His physical examination was unremarkable, and Dr. Williams assessed him with chronic muscle/skeletal pain/disability (AR 439-440). Dr. Williams noted that he had received a letter from Lindsey's attorney requesting an assessment of Lindsey's ability to do tasks (AR 440). Dr. Williams informed Lindsey that he did not feel qualified to assess his ability to work in a 15 to 20 minute office visit (AR 440). He referred him to physical therapy for evaluation and treatment, and informed Lindsey that he would complete the forms after the evaluation if warranted (AR 440).

On March 8, 2004 Lindsey was seen at Health South for physical therapy evaluation and treatment (AR 452). Although his physical therapist assessed his rehabilitation potential as "good," Lindsey discontinued treatment after one session and was discharged due to noncompliance (AR 443; 452).

Lindsey apparently sought emergency treatment for low back pain on September 6, 2004 (AR 456). He was prescribed Vioxx and Vicodin (AR 456).

Lindsey returned to Community Health Net on October 22, 2004 for follow-up of his low back pain and was seen by Anthony Snow, M.D. (AR 458-459). Dr. Snow reported that Lindsey had tenderness in the lumbosacral spinal area and into the buttock bilaterally, and diagnosed

chronic lumbosacral spinal pain (AR 459). Dr. Snow discontinued the Flexeril, prescribed Parafon Forte and Naprosyn, and ordered a spine x-ray (AR 459).

Dr. Snow completed a medical source statement of Lindsey's ability to perform work-related activities (AR 461-462). He opined that Lindsey could lift and carry 2 to 3 pounds frequently and up to 10 pounds occasionally, could stand and walk 1 hour or less in an 8-hour day, could sit 8 hours with a sit/stand option, had a limited ability to push/pull with his upper extremities secondary to low back pain, and no ability to engage in postural activities (AR 461-462).

Approximately two months later, on December 21, 2004, Dr. Snow wrote a note stating that he had incorrectly answered the question regarding Lindsey's ability to sit, and that the correct answer was that he could only sit for a maximum of 4 hours in an 8-hour day (AR 460).

Lindsey testified at all three hearings held by the ALJ on September 12, 2002, February 18, 2004, and November 19, 2004 (AR 42-58, 59-117). At the first hearing, Lindsey testified that he was unable to work due to a lower back problem and because his legs were "bad" (AR 52). He was able to lift approximately 25 pounds, but was unable to sit for prolonged periods (AR 53-54). He was able to "walk all day," although he used a cane which had not been prescribed by a physician (AR 53-54). He lived with his father and was able to wash dishes, cook and grocery shop (AR 53-54).

At the second hearing, Lindsey testified that he had surgery in May 2003 to remove the rod from his right leg, and that he had lower back problems (AR 70-71). He claimed to suffer from back pain upon bending or lifting, and was only able to sit for a maximum of 20 minutes (AR 71). Lindsey testified that his back pain had worsened and radiated into his hips (AR 76). He became "short-winded" while walking, and suffered sharp pains in his right leg, and claimed he was unable to walk a block (AR 71, 73). Lindsey further testified that his cane had been prescribed by the physician who performed the surgery on his right leg, and without it he became unbalanced (AR 73-75). He further testified he suffered from dizziness and lightheadedness (AR 75). His pain medications caused drowsiness, which caused him to lie down 4 to 5 times a day for approximately 30 to 45 minutes (AR 73; 80). He lived with his father and performed no household chores (AR 82-83).

At the final hearing, Lindsey testified that he suffered from severe low back pain due to a herniated disc which was causing pressure on the sciatic nerve (AR 99). He claimed to be in constant pain, and suffered from leg numbness (AR 99). He was able to sit for approximately half an hour, and then had to stand and move around for approximately 15 to 20 minutes (AR 100). He put ice on his back 3 times a day for half an hour (AR 101). He testified that his pain medications caused concentration problems and tiredness (AR 101-102). He claimed his condition had worsened since the last hearing (AR 103). He discontinued physical therapy with his physician's permission because it was too painful (AR 103). Lindsey admitted that he was not seen at Community Health Net between December 2003 and October 2004 (AR 105).

The vocational expert was asked to consider an individual of Lindsey's age, education, and vocational background, who could occasionally lift no more than 10 pounds, could stand or walk no more than 2 two hours per day, sit for the remainder of the day, and required a sit/stand option at half hour intervals (AR 112-113). The expert testified that such an individual could work as a hand packer, sorter/grader or telephone solicitor (AR 113).

The ALJ subsequently issued a written decision which found that Lindsey was not entitled to a period of disability, DIB or SSI within the meaning of the Social Security Act (AR 21-31). His request for an appeal with the Appeals Council was denied making the ALJ's decision the final decision of the Commissioner (AR 10-13). He subsequently filed this action.

## II. STANDARD OF REVIEW

The Court must affirm the determination of the Commissioner unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence does not mean a large or considerable amount of evidence, but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 564-65 (1988) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)); *see Richardson v. Parales,* 402 U.S. 389, 401 (1971). It has been defined as less than a preponderance of evidence but more than a mere scintilla. *See Richardson,* 402 U.S. at 401; *Jesurum v. Secretary of the United States Dept. of Health and Human Servs.,* 48 F.3d 114, 117 (3d Cir. 1995).

## III. DISCUSSION

Title II of the Social Security Act provides for the payment of disability insurance

8

benefits to those who have contributed to the program and who have become so disabled that they are unable to engage in any substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). Title XVI of the Act establishes that SSI benefits are payable to those individuals who are similarly disabled and whose income and resources fall below designated levels. 42 U.S.C. § 1382(a). A person who does not have insured status under Title II may nevertheless receive benefits under Title XVI. *Compare* 42 U.S.C. § 423(a)(1) *with* 42 U.S.C. § 1382(a). In order to be entitled to DIB under Title II, a claimant must additionally establish that his disability existed before the expiration of his insured status. 42 U.S.C. § 423(a), (c). The ALJ found that Lindsey met the disability insured status requirements of the Act (AR 30). SSI does not have an insured status requirement.

A person is "disabled" within the meaning of the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a five-step evaluation process to determine when an individual meets this definition:

> In the first two steps, the claimant must establish (1) that he is not engaged in "substantial gainful activity" and (2) that he suffers from a severe medical impairment. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). If the claimant shows a severe medical impairment, the [Commissioner] determines (3) whether the impairment is equivalent to an impairment listed by the [Commissioner] as creating a presumption of disability. *Bowen,* 482 U.S. at 141. If it is not, the claimant bears the burden of showing (4) that the impairment prevents him from performing the work that he has performed in the past. *Id.* If the claimant satisfies this burden, the [Commissioner] must grant the claimant benefits unless the [Commissioner] can demonstrate (5) that there are jobs in the national economy that the claimant can perform. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3rd Cir. 1985).

*Jesurum*, 48 F.3d at 117.

The ALJ resolved Lindsey's case at the fifth step. At step two, the ALJ determined that the residual effects of his lower extremity fractures and chronic back pain with mild lumbar disc abnormalities were severe impairments, but determined at step three that he did not meet a listing (AR 25-26). At step four, the ALJ determined that he could not return to his past work, but

retained the residual functional capacity to perform work that involved lifting no more than 10 pounds occasionally, could stand or walk up to 2 hours per day and sit for the balance of an 8-hour workday, with a sit/stand option at one-half hour intervals (AR 28). At the final step, the ALJ determined that Lindsey could perform the jobs cited by the vocational expert at the administrative hearing (AR 29-30). The ALJ additionally determined that his allegations regarding his limitations were not credible (AR 30). Again, we must affirm this determination unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g). Lindsey challenges the ALJ's evaluation of the medical evidence and his hypothetical question posed to the vocational expert.

### A. *Evaluation of the medical evidence*

Although Lindsey sets forth a number of errors allegedly committed by the ALJ, he fundamentally argues that the ALJ improperly rejected the opinion of his treating physician, Dr. Snow, and the opinion of the consulting examiner, Dr. Kalata.

With respect to Dr. Snow's opinion, we note at the outset that a treating physician's opinion is given controlling weight only when it is well-supported and consistent with the other evidence of record, *see* 20 C.F.R. § 404.1527(d)(2), and may only be rejected on the basis of contradictory medical testimony. *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3rd Cir. 1988). When medical testimony conflicts or is inconsistent, the ALJ is required to choose between them. *Cotter v. Harris*, 642 F.2d 700, 705 (3rd Cir. 1981). In making that choice, a treating physician's conclusions are to be examined carefully and accorded more weight than a non-treating physician's opinion. *Podedworny v. Harris*, 745 F.2d 210, 217 (3rd Cir 1984). Where an ALJ chooses to reject the opinion of a treating physician, he must adequately explain in the record his reasons for doing so. *Sykes v. Apfel*, 228 F.3d 259, 266 (3rd Cir. 2000) ("Where the Secretary is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence.").

We find that the ALJ evaluated Dr. Snow's opinion consistent with the above standards.

Dr. Snow opined in October 2004 that Lindsey could lift and carry 2 to 3 pounds frequently and up to 10 pounds occasionally, could stand and walk 1 hour or less in an 8-hour day, could sit 8 hours with a sit/stand option, had a limited ability to push/pull with his upper extremities secondary to low back pain, and no ability to engage in postural activities (AR 461-462). He revised this opinion in December 2004, stating that he had incorrectly answered the question regarding Lindsey's ability to sit, and that he could only sit for a maximum of 4 hours in an 8-hour day (AR 460). The ALJ found that Dr. Snow's opinion was apparently based upon Lindsey's subjective complaints of pain since physical examination revealed tenderness in the lumbosacral area and buttock (AR 27). The ALJ noted that no other physical abnormalities were observed and no objective testing of any nature was performed (AR 27). Finally, he observed that no explanation or rationale was provided for the severe limitations that were assessed in regard to his functional capacity or the inability to perform any postural movements whatsoever (AR 28). Consequently, the ALJ accorded little weight to Dr. Snow's opinion (AR 27).

We conclude that the ALJ could properly decline to give Dr. Snow's opinion controlling weight. A treating source's medical opinion concerning the nature and severity of the claimant's alleged impairments will only be given controlling weight if the Commissioner finds that the treating source's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2). As the ALJ observed in his thorough review of the medical evidence, Dr. Snow's opinion was unsupported by the clinical findings as set forth in the progress notes. Although Dr. Snow's opinion functionally rendered Lindsey disabled, his clinical examination only revealed some tenderness in the lumbosacral spinal area and into the buttock bilaterally, and no other objective tests were performed (AR 459). *See Grandillo v. Barnhart,* 105 Fed.Appx. 415, 418-19 (3rd Cir. 2004) (rejecting treating physician's opinion as inconsistent with his own clinical findings); *Allison v. Barnhart,* 100 Fed.Appx. 106, 109 (3rd Cir. 2004) (same).

Lindsey argues that Dr. Snow had access to his medical records at Community Health Net, and suggests, by implication, that his opinion was based upon the records as a whole. However, Dr. Snow's opinion does not reference any other Community Health Net treatment notes in support of his opinion, and, more critically, these treatment notes do not support the limited functional restrictions assessed by Dr. Snow.  Although Lindsey complained of back and leg pain, his physical examinations were relatively benign.  When initially seen in November 2000, he had good mobility with no palpable discomfort in his lower back, although he did have a hard time bending forward (AR 279).  His straight leg raise test showed tight hamstrings, but no discomfort (AR 279).  In July 2002, he reported to Dr. Hoogland that medication helped his pain (AR 277).  In September 2003, Lindsey had only a slight decrease in the range of motion in his right knee secondary to pain, but his gait, muscle strength and stability were normal (AR 429-430).  In December 2003, he had steady ambulation and full active range of motion of the lumbar spine and both legs (AR 425).

Moreover, Dr. Snow's opinion was inconsistent with the other medical evidence of record.[2]  Dr. Rahner, a treating physician who is a specialist in orthopedics, reported that Lindsey's fractures were well-healed with no indication of arthritis, and while x-rays of his lumbar spine showed sacralization at the L5 disc level, no facet degeneration or disc narrowing was present (AR 232, 244).  Dr. Rahner opined that Lindsey was suitable for employment with

---

[2] We reject Lindsey's contention that the ALJ should have re-contacted Dr. Snow in the event of a conflict in the functional capacity assessment.  Here, the ALJ specifically found no internal conflict existed which would necessitate recontacting Dr. Snow (AR 21-22).  Section 416.912(e)(1) provides that the Administration will take action to re-contact medical sources and obtain additional medical information where the existing evidence is insufficient to determine whether a claimant is disabled.  20 C.F.R. § 416.912(e)(1).  We believe the ALJ could permissibly render a decision based upon the evidence in the present record without further development and, therefore, find no error in the ALJ's failure to re-contact Dr. Snow for further clarification under the circumstances here.

no repetitive or heavy lifting in excess of 25 pounds (AR 232).[3]  Likewise, Dr. Ferretti, a consulting examiner, reported that Lindsey's motor strength was functional at 5/5, and there was no muscle atrophy or restrictions in range of motion (AR 245).  He exhibited a normal gait, and had no difficulty sitting, bending, standing, walking, lifting or grasping (AR 245).  Only minor degenerative changes were present in the lower thoracic spine with a narrow transitional L5-S1 disc space (AR 248).

Dr. Snow's opinion was also at odds with Dr. Voora's opinion, a consulting examiner, who found that Lindsey's station and gait were normal with no need for a cane, he had no atrophy of his muscles, and had 5/5 motor function in both his upper and lower extremities (AR 406-407).  She further found that he had a full range of motion in all areas, except for a slight decrease in his right knee (AR 410-411).  The ALJ accorded substantial weight to Dr. Voora's opinion, finding that her examination was thorough, even though the dictation was partially cut off (AR 28).  He concluded that the objective findings reported in her examination of Lindsey were consistent with those reported by Dr. Ferretti (AR 28).

Lindsey contests the substantial weight the ALJ accorded Dr. Voora's opinion, claiming that he improperly bolstered Dr. Voora's opinion with Dr. Ferretti's opinion, which had been rendered two years earlier.  We fail to see the error in this regard.  Dr. Voora's findings were, in fact, consistent with Dr. Ferretti's findings, notwithstanding the fact that Dr. Ferretti's examination occurred two years earlier.  If anything, this consistency demonstrates that Lindsey's condition had not deteriorated, and lends further credence to the ALJ's determination that Lindsey was not precluded from working.

Lindsey further contests the ALJ's reliance on Dr. Wallace's opinion, a state agency medical consultant, who agreed with the state agency adjudicator's assessment that Lindsey was

---

[3] Lindsey claims in his brief that because Dr. Rahner did not provide any medical opinion or treatment records in this case, his opinion cannot be used by the ALJ to bolster other opinions. See Plaintiff's Brief p. 14.  However, as the above discussion reveals, Lindsey is incorrect, and these records were included for the ALJ's consideration.

capable of light work. Lindsey claims that since there is no evidence which suggests that Dr. Wallace is an acceptable medical source, the ALJ's reliance on his opinion was error. We reject this argument for several reasons. Dr. Wallace's opinion was set forth on a form entitled "Medical Consultant's Review of Physical Residual Functional Capacity Assessment," and fairly read, suggests that Dr. Wallace was, in fact, a physician. Even assuming he was not a physician and was simply a state agency adjudicator, it is clear from the ALJ's decision that he did not fully adopt his opinion, since he assessed Lindsey's exertional capacity in the sedentary range. Consequently, we find no reversible error in this regard.

Lindsey further claims that Dr. Snow's opinion is supported by Dr. Kalata's opinion, a consultative examiner who examined Lindsey pursuant to the request of the Commissioner. Dr. Kalata opined that Lindsey was limited to lifting and carrying 2 to 3 pounds at a time, could stand and walk 1 hour or less in an 8-hour day, was limited in pushing/pulling with his lower extremities, could not stoop, crouch or balance, but could occasionally bend and climb, and had no limitations in sitting (AR 264-265). Lindsey claims that the ALJ erred in according Dr. Kalata's opinion limited weight, since it is consistent with Dr. Snow's opinion and negates his ability to perform sedentary work.

We find no error in this regard. We first note that the treating physician rule does not apply to a consulting physician's opinion. *Mason v. Shalala*, 994 F.2d 1058, 1067 (3rd Cir. 1993) (doctrine had no application to physician who examined claimant once). Nonetheless, the Commissioner's regulations provide that the ALJ must consider the extent to which the opinion is supported by a logical explanation, the degree of the medical source's specialization in a relevant field, and the extent to which the source's opinion is consistent with the entirety of the evidence. *See generally* 20 C.F.R. § 416.927(d)(1)-(6).

The ALJ here evaluated Dr. Kalata's opinion consistent with the above standards. Following his decision to accord Dr. Snow's opinion little weight, the ALJ considered Dr. Kalata's reported findings based upon his physical examination of Lindsey, and concluded that

his opinion was inconsistent with the remaining treating or examining physicians' opinions (AR 28). Specifically, he noted that although Dr. Kalata felt there was some atrophy of the quadriceps muscles, no other physician described such a condition (AR 28). He further noted that all other physicians had found normal 5/5 muscle strength, and described a normal station and gait without the need for a cane (AR 28). He finally observed that only Dr. Kalata diagnosed "ambulatory dysfunction," an imprecise term (AR 28). All of these findings (without repeating such findings here) are supported by the record, and, consequently, we find no error in this regard.[4]

### B.   *Hypothetical question posed to the vocational expert*

Lindsey further challenges the ALJ's hypothetical question posed to the vocational expert. The law is well established that "[w]hile the ALJ may proffer a variety of assumptions to [a vocational] expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments." *Podedworny v. Harris*, 745 F.2d 210, 218 (3rd Cir. 1984). In other words, "[a] hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3rd Cir. 1987), *citing, Podedworny, supra. See also Wallace v. Secretary of Health and Human Services*, 722 F.2d 1150 (3rd Cir. 1983).

Here, Lindsey in essence argues that the ALJ's hypothetical relative to his functional restrictions was not supported by acceptable medical evidence of record and failed to accurately

---

[4]Parenthetically, we reject Lindsey's argument that the ALJ failed to fully comply with the Appeals Council's prior remand order in evaluating his RFC. The Appeals Council ordered the ALJ to update the medical evidence, give further consideration to Lindsey's RFC with specific references to the evidence of record in support of assessed limitations, and further evaluate examining source opinions, explaining the weight accorded such opinion evidence (AR 332). Although Lindsey has not articulated specific errors committed by the ALJ, we nonetheless conclude that the ALJ fully followed the Appeals Council's directives in this regard.

portray his limitations.  Because we have already determined that no error occurred in the ALJ's evaluation of the medical evidence, it was not error for the ALJ to rely on the vocational expert's testimony.  We therefore find no error in this regard.

### IV. Conclusion

An appropriate Order follows.

y

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DUANE M. LINDSEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 05-241 Erie |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER

AND NOW, this 30th day of May, 2006, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Plaintiff's Motion for Summary Judgment [Doc. No. 11] is DENIED, and the Defendant's Motion for Summary Judgment [Doc. No. 13] is GRANTED. JUDGMENT is hereby entered in favor of Defendant, Jo Anne B. Barnhart, Commissioner of Social Security, and against Plaintiff, Duane M. Lindsey. The clerk is directed to mark the case closed.

s/ Sean J. McLaughlin<br>
United States District Judge

cm: All parties of record.